NEW YORK COUNTY—HON. ANTHONY L. ROBERTSON, SURROGATE— December, 1848.

## In re VANDERVOORT.*

*In the Matter of the account of* PETER H. VANDERVOORT, *executor of* WILLIAM VANDERVOORT, *deceased.*

The executor is accountable only for what he has actually received as proceeds of sales; and where real estate, subject to a power of sale by the executor, has been sold under a decree of a Court of Chancery, and the proceeds paid over to the heirs, by order of that court, the executor is not bound to account for such proceeds in the Surrogate's Court.

Where a will creates a trust of the rents of real estate for the benefit of a family, while " they continue such," and there is no similar trust of the proceeds of the sale of such lands, under a power contained in the will, such power, though not limited in terms, cannot be exercised until the family is broken up.

At common law, the spiritual courts had no jurisdiction over real estate or its proceeds; and the provisions of 2 *Rev. Stat.*, 110, § 57, and *Laws of* 1837, 536, § 75,—giving the surrogate power in such cases,—only apply where there is an out-and-out conversion, and not where a mere discretionary power to sell or to make division is given.

A power of sale, where the grantees of such power have authority to make such partition as they deem best, is not an imperative power or an out-and-out conversion, as will give the surrogate jurisdiction.

Though a power to sell, for the purposes of distribution, be an entire conversion of land into money; yet, if one of the distributees die before actual conversion, the conversion, so far as his representatives are concerned, is not complete, and the executor is accountable for the proceeds only to his heir, and not his personal representatives.

A. F. SMITH, *for Applicant.*

J. L. MANN, *opposed.*

* Reported in 7 *N. Y. Leg. Obs.*, 25.

THE SURROGATE.—The application for the account in this matter, is made by the administrator of Robert Bruce Vandervoort, a son of the testator. The applicant claims that the surviving executor, who is cited to render such account, should in addition to his account of personal estate, account for the rents, and the proceeds of the sale of lands. To this the executor objects: 1st, that the land having been sold by proceedings in Chancery, *in invitum*, the proceeds were paid over to the heirs of Mr. R. B. Vandervoort, by the authority of that court, and he has nothing to account for; 2d, that the heirs, and not the personal representatives of the deceased, are alone entitled to any account; 3d, that this court has no jurisdiction to compel an account of the rents received by him.

As to the *first* point, as the executor can only be made accountable for what he actually received as proceeds of sales, he undoubtedly is not bound to account for moneys paid over by the Court of Chancery to the heirs.

The second and third points will be found to depend on the question, whether this be an " *out-and-out*" conversion by the will, as will be seen by separately considering them. The will made in 1836 devises to two persons, since deceased, and the applicant's intestate (who are also therein appointed executors), as joint-tenants, all the estate of the testator upon trust, to receive the rents of the real, to collect the personal, and out of such moneys to pay the premiums of insurance, and reasonable amounts for the maintenance of his family, " so long as they remain as such;" and " on the further trust, that they have power to sell every part of his real estate," and dispose of the consideration-money, so received for the sale, towards the payment of incumbrances, or otherwise, at their discretion;" and that " all moneys coming into their hands, up to the period of the settlement of his estate, which shall remain as a balance, shall be distributed and divided to and among his children, or the children or child of any child who may be dead, as if he had died intestate." It also provided that the executors might, from time to time,

" make such divisions, exchanges, and dispositions of all his real estate among his children, as might be beneficial to his estate." The present executor was added by a codicil.

The first question that arises is, whether the children of the deceased intestate take as heirs of their father, if the estate was unconverted at the time of his death, or as purchasers under the will; and it is contended by the executors, they take in the latter capacity under the clause, " children of those who are dead." The time of death must, of course, depend on some other contingency, and the only period indicated is that of " the settlement of the estate;" and the only settlement of the estate pointed out, is when the " family" cease " to remain together as such." Until that takes place, there is a trust of rents and personal estate for their support. No provision is made for a like trust of the income of the proceeds of the sales of real estate; it is not to be presumed that the power of sale was to be exercised, and the proceeds divided among the parties before the family separated. Indeed, as its suspension would depend on the parties electing to keep together as a family, it would plainly be a sensible mode of producing family harmony and union, and such appears to have been the testator's object. Even if, therefore, " the moneys remaining as a balance," be not simply that portion of the personal property which remained unexpended on the purpose of trust (to which construction I incline, as the executors are afterwards authorized to divide the land specifically), the children of those who were dead when the family broke up, would take as purchasers, and be the only persons entitled to demand an account. If, however, the sale was to be for general purposes of distribution, it still remains to be examined whether the property descended to the children as real estate, or passed to the personal representative of Robert B. Vandervoort, as personal assets. This, as the property was not actually sold by the executors, would depend on the question, whether the conversion was out and out.

The other point will also be found on examination, to de-

pend on the same question. At common law, spiritual courts had no jurisdiction over the payment of debts at all, or over real estate or its proceeds ; land not being subject to the payment of certain debts at all, created the distinction between legal and equitable assets; the former being those where preference was observed, and the latter where the proceeds were brought into a court of equity and distributed equally among all the creditors of the testator. (2 *Williams on Executors*, 133.) Spiritual courts, therefore, never had any power to apply the proceeds of the sale of real estate to the payment of debts, because they never were legal assets ; the *dicta* to the contrary, in *Bogert* v. *Hertell* (4 *Hill*, 494), and *Stagg* v. *Jackson* (1 *N. Y.* [1 *Comst.*], 206), are wholly unsupported by reason or authority, and were not necessary to the decision of those cases ; in fact, the case of *Silk* v. *Brine* (1 *Bro. Ch. C.*, 188, in notes), cited in the former, directly contradicts it, and the work cited in the latter (*Ram on Assets*), in a subsequent part to that quoted (p. 321), states that the authorities cited in the former part have since been overturned by subsequent cases, two of which I shall now examine. The *first* is that of *Clay* v. *Willis* (1 *Barn. & Cress.*, 364). That was an action at law for money had and received; the plaintiffs were administrators with the will annexed ; the defendant was an executor of an agent of two executors under the will, who were also devisees of real estate in trust to sell to pay debts ; a prior mortgagee had sold the land after the testator's death, and paid over the surplus of proceeds to the defendant's intestate as agent of the executors ; the action was held not to be maintainable, because the assets were equitable, and could not have been recovered by the original executors *quâ* executors. The second is that of *Barker* v. *May* (9 *Barn. & Cress.*, 489). That was an application for a prohibition against a consistorial court, to prevent its taking cognizance of a claim for a legacy made by a legatee against a devisee, in trust to sell by a will which gave the legacy, and in which the proceeds were directed to be deemed part of the personal estate, to pay the

legacy in question and other legacies. The Court of King's Bench granted the prohibition, because the assets were equitable; and Lord TENTERDEN added, that the direction to consider the proceeds personal estate, could not alter their legal character. Since those cases, no one has been bold enough to attempt to enforce payment of debts or legacies in a common law or ecclesiastical court, out of the proceeds of the sale of real estate. I am, therefore, satisfied that I have no jurisdiction over these proceeds at common law.

The statute of 1822 (*Laws of* 1822, 203, § 3), provided that wherever lands were sold under a power contained in a last will, the same might be distributed by a surrogate; this converted such proceeds into legal assets, and subjected them to preferences. The Revised Statutes, in 1830, changed this phraseology, and inserted the word "*ordered*," still preserving their character as *legal* assets, by the express direction that the distribution should be as of personal property in the hands of an administrator, which still subjects them to the priority of certain debts. (2 *Rev. Stat.*, 110, § 57.) Subsequently the Legislature, in 1837, added another provision, that the proceeds of sales made in pursuance of a testamentary authority might be brought into the surrogate's office for distribution; but it was made *equitable* assets by the subsequent clause which placed them on a footing with the proceeds of real estate ordered to be sold by the surrogate on the application of creditors, which were ratably distributed. (*Laws of* 1837, 536, § 75.) There can be no question that the statutes of 1830 only applied to cases of out-and-out conversion; not only from the change of language from that of the old statute, and the legislative interpretation put on this section by the act of 1837, but also from the fact that the immediately preceding section speaks both of the cases where lands are devised to be sold, and where they are ordered by will to be sold, whereas this speaks of but the latter only. The case of *Stagg* v. *Jackson* (1 *N. Y.* [1 *Comst.*], 206), under the equity of this statute, where land was ordered to be sold, has held that rents, which are to form a common

fund with the proceeds of the sale, are also to be accounted for before the surrogate as a species of limited conversion, overlooking the fact, that assets are specifically enumerated in the statute (2 *Rev. Stat.*, 82, § 6), which was not urged in the Court of Appeals on the argument, although the revisers in their notes declare, in that enumeration, their object to have been to save all questions as to what constituted assets.

The only question that remains, therefore, is, whether the executors were not allowed by the will any discretion as to selling, so as to make it a complete conversion. I think, without undertaking positively to say, that their power of sale was intended to be confined to paying off incumbrances. The power to make divisions without sale, if they deemed best, takes away the imperative character of this authority to sell, and makes it alternative to sell or divide, as they think proper, and does not order them to sell absolutely: for this reason, I think this case does not come within the statute, and the Surrogate's Court has no jurisdiction.

There is also another ground upon which I think the present applicant has no right to require an account. Though a power to sell for the purposes of distribution be an entire conversion of land into money, yet if one of the distributees die before actual conversion, the conversion so far as his representatives are concerned is not complete, and the executor is accountable for the proceeds only to his heir (*Smith* v. *Claxton*, 4 *Mad.*, 486 ; *Bogert* v. *Hertell*, 4 *Hill*, 494); so that in this case the children of Mr. R. B. Vandervoort, not his administrators, would be the proper persons to require an account, and the Court of Chancery has so held, and ordered the proceeds paid over to them.

I have withheld, as unnecessary, any consideration of the question, whether this executor had any power over the real estate, as the codicil only gave the same powers and interests to him as if he were nominated an executor in the will. Nominating him as executor would not give him the power, and the power is given to the parties by name and not to executors generally.

Upon the whole, therefore, I am of opinion that I have no jurisdiction over real estate or its rents in this matter, and that if I had, the present applicant is not the proper person to claim it; the question of costs as to this claim must be disposed of in the final decree.